Brad H. Bearnson (#3633)
Wayne K. Caldwell (#9466)
Aaron K. Bergman (#13147)
BEARNSON & CALDWELL, LLC
399 North Main, Suite 270
Logan, Utah 84321
Telephone: (435)752-6300
Facsimile: (435)752-6301
Email: abergman@bearnsonlaw.com
Please cc: cjeppsen@bearnsonlaw.com
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## NORTHERN DIVISION

| | |
|---|---|
| JACKIE BATES, individually and on behalf of her son, K.B.<br><br>        Plaintiffs,<br><br>    v.<br><br>CACHE COUNTY SCHOOL DISTRICT, a limited purpose entity; CACHE COUNTY SCHOOL BOARD, a local school board; JOEL ALLRED, in his individual and official capacities; and JOHN ANDERSON, in his individual and official capacities,<br><br>        Defendants. | **COMPLAINT**<br><br>**WITH**<br><br>**JURY DEMAND**<br><br>Case No. 1:20-cv-00055-JNP<br><br>District Judge: Jill N. Parrish |

COME NOW Plaintiffs, JACKIE BATES, individually and on behalf of her son

K.B., by and through their legal counsel Aaron K. Bergman and BEARNSON &

CALDWELL, LLC, and do hereby complain against Defendants CACHE COUNTY

SCHOOL DISTRICT, CACHE COUNTY SCHOOL BOARD, JOEL ALLRED, and JOHN ANDERSON as follows.

## NATURE OF ACTION

This is a civil rights action. Individually and on behalf of K.B., an action is brought pursuant to the Individuals with Disabilities Education Act, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983. Declaratory relief, compensatory relief, and general and special damages are sought, as well as costs, interest and attorney's fees. Also raised is a state claim, for negligence in the alternative.

## PARTIES

1. Plaintiff K.B. is a minor individual residing in Cache County, UT.

2. Plaintiff JACKIE BATES is the biological mother of K.B. and is an individual residing in Cache County, UT.

3. Defendant CACHE COUNTY SCHOOL DISTRICT is a limited purpose entity in Cache County, Utah.

4. Defendant CACHE COUNTY SCHOOL BOARD is a local school board, and controls the Cache County School District. At various times throughout this pleading, said school board, as well as said District, is referred to collectively as "the District."

5.     Defendant JOEL ALLRED is an individual who under information and belief resides in Cache County, UT, and for all times relevant to this lawsuit is an employee of the District.

6.     Defendant JOHN ANDERSON is an individual who under information and belief resides in Cache County, UT, and for all times relevant to this lawsuit is an employee of the District.

## JURISDICTION & VENUE

7.     Pursuant to the Individuals with Disabilities Education Act ("IDEA"), Plaintiffs have exhausted their administrative remedies and the statute of limitations to the claims set forth herein were thereby administratively tolled, see 20 U.S.C. § 1415(l), in addition to tolling by virtue of incapacity. See Utah Code Ann. § 78B-2-108.

8.     This Court has jurisdiction for claims under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and for claims under 42 U.S.C. § 1983. See 28 U.S.C. § 1331 (federal question).

9.     This Court also has jurisdiction for actions to secure one's civil rights. See 28 U.S.C. § 1343(3) and (4) (civil rights actions).

10.    This Court also has jurisdiction over Plaintiffs' state law claims. See 28 U.S.C. § 1367 (supplemental jurisdiction).

11.    Any entitlement to notice Defendants may have had under Utah's Governmental Immunity Act was provided, to which there was no response. See *Notice*

*of Intent to Commence Action – with Receipts*, attached hereto as Exhibit "A." Such notice is not required in relationship to Plaintiffs' federal law claims.

12.     The Defendant District and its employees cannot claim Eleventh Amendment Immunity. See *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977); see also *Ambus v. Granite Bd. of Educ.*, 995 F.2d 992, 997 (10th Cir. 1993); see also *Chase v. Jordan School Dist.*, 2005 UT App. 302, fn. 1.

13.     Venue is properly had in the United States District Court for the District of Utah. See 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

14.     K.B. is disabled and is a student at the District. Beginning in Kindergarten (2014-15 School Year), Ms. Bates noticed that K.B. started to display symptoms of severe anxiety, with symptoms beginning just after the start of school.

15.     Repeatedly, Ms. Bates brought concerns to the District's attention over her son's anxiety, explaining to the District, to Defendant John Anderson (principal), and to Defendant Joel Allred (special education director) that K.B. appeared to be making little to no academic progress, and was unable to participate in the educational process on a curricular, behavioral, social level. Other teachers within the District raised similar concerns to the District's attention.

16.     Under the Individuals with Disabilities Education Act, the Defendant District has a legal obligation to affirmatively identify K.B. who has a disability. Despite

the District's obligations, and the notice that it had of K.B.'s need for accommodations, K.B.'s Kindergarten year continued and the District did not, at any time that school-year, attempt to identify whether K.B. had a disability, or evaluate K.B. for placement of IDEA services.

17. Through the summer between K.B.'s Kindergarten and First Grade, again the District took no action to identify whether K.B. had a disability, or to evaluate K.B. for placement.

18. Entering K.B.'s First Grade (2015-2016 School Year), Ms. Bates continued to tell the District, as well as Defendant Anderson, that K.B.'s severe anxiety was interfering with his ability to participate in school. Such was evidenced by K.B.'s low performance at school, particularly in reading and math; furthermore, K.B. would regularly express to Ms. Bates, even at his young age, that he "hated" school, and would regularly awake in the middle of the night, crying out of fear for the next school day which would surely come.

19. Ms. Bates conveyed these concerns to the Defendants. Defendants took no action to identify K.B.'s disability or to evaluate K.B. for placement.

20. Through the summer between K.B.'s First Grade and Second Grade, the the District still took no action to identify whether K.B. had a disability or to evaluate K.B. for placement.

21.    At the beginning of K.B.'s Second Grade (2016-2017 School Year), having still never attempted to assess K.B.'s disability to ensure he was receiving a Free, Appropriate, and Public Education, as is required under the Individuals Disabilities Act, on or about August 22, 2016 Ms. Bates found a doctor. Ms. Bates paid for the doctor's services in providing several preliminary assessments for K.B. On performing these preliminary assessments, the doctor determined there indeed were concerns that K.B. was suffering from Obsessive Compulsive Disorder, oppositional defiance, school phobia, and anxiety. The doctor referred the matter out for additional assessments, including a psycho-educational assessment done at the school, which included an interview of K.B.'s parents, and an observation of K.B. in the class setting.

22.    The referrals were completed, and on or about September 23, 2016, the doctor had K.B. return for a follow-up assessment.  Informed by parental and grandparent testing (Achenbach Child Behavior Checklist), as well as teacher testing (Achenbach Teach Report Form), as well as questions answered under the Autistic Spectrum Disorder Evaluation Scale, the doctor found that indeed K.B. was disabled, and that his disability was "significantly impacting his activities of daily living." Included in this impact were learning difficulties, "especially reading." The doctor recommended additional mental health counseling, speech therapy, occupational therapy, and advised Ms. Bates to consider obtaining a formal autism assessment. The doctor also specifically referred his

findings to the District to "see if school services and accommodations can be implemented specific to his [K.B.'s] difficulties."

23.     Ms. Bates provided the aforementioned doctor's findings to Defendants, and requested a meeting with the Defendant District.

24.     On or about October 16, 2016, meeting was held. Present at the meeting was Ms. Bates, Defendant Anderson, Defendant Allred, and a special education teacher.

25.     Under the Individuals with Disabilities Education Act, the Defendant District was required to provide Jackie Bates with a notice of its determination as to whether K.B. had a disability, and whether the District would evaluate K.B. for placement (Written Notice of Eligibility).

26.     Never before had the District ever provided Ms. Bates with a Written Prior Notice of Eligibility.

27.     Defendants handed Jackie Bates a "Written Prior Notice of Eligibility," which stated that the District had decided that K.B. was not disabled because his anxiety was not 'severe enough.' The District did not bring or provide any assessment of its own for the meeting.

28.     Jackie Bates informed the Defendants that she strongly disagreed with the Defendant District's decision, and that the decision ran completely contrary to the doctor's findings, which the Defendants had possession of.

29.     In addition to a Written Prior Notice of Eligibility, the District was required to provide Ms. Bates with her own notice, of her procedural safeguards should she wish to dispute the District's Written Prior Notice of Eligibility. However, the Defendants did not provide Jackie Bates with a notice of her procedural safeguards. Nor did they explain to Ms. Bates how she could exercise those procedural safeguards, to effectively dispute the District's Written Prior Notice of Eligibility.

30.     Instead, and confusingly so, the District gave Ms. Bates an "Individualized Education Plan," commonly referred to by its acronym "IEP," dated October 19, 2016. Under the IDEA, an IEP sets forth the goals for the respective disabled student that address the student's specific and unique disability. The IEP then provides for services, discussed, analyzed, and accepted by an "IEP Team," which services are designed to assure the student is receiving a Free and Appropriate Public Education.

31.     The IEP that the District handed Ms. Bates contained goals for K.B., but did not provide for any services. Nor had there ever been a meeting or discussion by any IEP Team. Nor did the IEP, or Defendants, ever tell Ms. Bates that the IEP they had just handed her was a draft.

32.     For the remainder of his entire Second Grade school year (2016-17 School Year), K.B. continued to struggle in an inadequate educational placement.

33.     Finding that K.B.'s anxiety was only increasing, and his scores and overall school performance was only getting worse, in November of 2017 (2017-218 School

Year, 3rd Grade), Ms. Bates, again utilizing her own funds, paid for the autism assessment that K.B.'s aforementioned doctor had previously recommended. The resulting report, dated November 6, 2017, confirmed again the significant nature of K.B.'s disability, and again recommended for K.B. to receive Special Education Services (i.e. IDEA services), including Reading and Written Language instruction, Speech and Language and Occupational Therapy *in the school setting*. (hereinafter the "November Report"). The November Report was given to the Defendants, multiple times.

34.     The Defendants ignored the November Report. Nor did the District provide Ms. Bates with proper notice of her procedural safeguards, or with an explanation of how she could exercise those procedural safeguards.

35.     Wherefore, again at her own cost, Ms. Bates enrolled K.B. in math tutoring at the USU T.I.M.E Math Clinic. She also enrolled K.B. in literacy tutoring at the USU Literacy Clinic. She also enrolled K.B. in mental health counseling.

36.     Under the IDEA, K.B. was entitled to receive not only the services which Ms. Bates did her best to obtain for her son, but no less importantly, was entitled to receive those services *in the school setting*. The District would provide none of it, let alone in the school setting.

37.     Near the end of K.B.'s 3rd Grade (2017-18 School Year), after Ms. Bates had repeatedly insisted that K.B. be provided with at least *something* to address his

disability, for the first time ever, March 27, 2018, the District provided K.B. with a 504 Plan under § 504 of the Rehabilitation Act.

38.     The 504 Plan identified K.B. as having a disability. In reaching this determination, the Defendants did not provide their own assessment. Rather, the District relied upon those assessments which Ms. Bates had provided, and the District had had in its possession for years.  Notwithstanding, the District still refused to provide placement for K.B. in an IEP.

39.     The District's 504 Plan solely provided K.B. with weekly in-school counseling, and before-school math-fact practice. There was no provision made for any other services, whether in-school or out-of-school. Wherefore, the District continued to fail to identify and evaluate and place K.B. for services, as required under the IDEA.

40.     Ms. Bates turned to the help of another mother, a mother who herself used to be a special education aid. After continued insistence by Ms. Bates, and this new informal advocate, for the first time ever on October 19, 2018, well into K.B.'s 4th Grade (2018-19 School Year), the District finally identified K.B. as being eligible for an IEP and related IDEA services.

41.     In reaching this conclusion, the District did not provide its own assessment. The District relied solely upon the assessments that Ms. Bates had provided, which the District had had in its possession for years.

**Complaint with Jury Demand**
*Bates v. Cache County School District, et. al.,*
Case No.                                                                     Page 10

42.     Notwithstanding the fact that the District had finally acquiesced and in accordance with the required law provided K.B. with an IEP, the District still refused to provide K.B. with the services necessary to achieve a Free and Appropriate Public Education. The District still refused to consider K.B. for a specific learning disability in reading or written language; still refused occupational therapy until near the very end of K.B.'s Fourth Grade; and still refused reading and spelling support until the very end of K.B's Fourth Grade.

43.     Because the District did not properly identify, nor provide K.B. with services, K.B. has suffered greatly. Coming to school, K.B. repeatedly felt demeaned, stupid, and 'just not smart enough.' In reality, K.B. had a disability. By failing to identify K.B.'s disability and failing to implement the required services of an adequate IEP, the District subjected K.B. to repeated, dehumanizing, and humiliating circumstances.

44.     By way of singular example, at a parent-teacher conference K.B.'s teacher compelled K.B. to write down why he was doing so poorly in school. K.B.'s responses evidenced that his inability to enjoy a Free, Appropriate, and Public Education was his own fault, repeatedly setting forth self-demoralizing statements that he simply lacked the intellect, the drive, etc., that his peers so easily and readily possessed.

45.     Similarly, K.B. incessantly worried while in school and out of school about being able to perform at school; K.B. regularly awoke in the night, crying for fear of the

coming school day; indeed, K.B.'s anxiety became, and has become so great that K.B. requires *intensive mental health therapy*.

46.    Exacerbating the above circumstances, on finally providing K.B. with an IEP, the District in retaliatory fashion promptly, without meeting, and without notice, cancelled K.B.'s 504 Plan mental health counseling.

47.    During the summer between K.B.'s 4th and into the beginning of 5th Grade, and again at Ms. Bates' insistence, the District finally conducted an Independent Educational Evaluation ("IEE"), where the District finally collected its own actual data during the first month of K.B.'s 5th Grade. Using that data, the District finally reinstated K.B.'s much needed mental health counseling.

48.    By virtue of the Defendants' above actions, K.B. has suffered immensely, and will suffer immensely into the future, and will continue to experience exclusion from ordinary classes with his peers.

<u>**FIRST CAUSE OF ACTION**</u>
**DISCRIMINATION AND RETALIATION – TITLE II OF THE ADA**
(Against the District)

49.    Plaintiffs restate the prior allegations, incorporating them herein by reference as if restated with full force and effect.

50.    The District receives funding from one or more federal sources in providing educational programs, activities, and services to the public. Plaintiff K.B. is a "qualified individual with a disability" as defined by 42 U.S.C. § 12131(2). As to K.B., therefore,

the District is subject to the requirements of Title II of the Americans with Disabilities Act ("ADA").

51.     At all times relevant to this Complaint, the individual Defendants did act in their capacities as agents, representatives and employees of the Cache School District.

52.     The ADA and its implementing regulations require that Alternative Services be made available in the community, e.g. at school, rather than in an institutional setting.

53.     Defendants had possession of K.B.'s medical assessments making clear that K.B. suffered from one or more disabilities.

54.     Defendants had received repeated complaints and concerns raised by K.B.'s parent, Ms. Bates, as well as by one or more teachers and aides regarding K.B.'s need for accommodations.

55.     Defendants were also well acquainted with K.B.

56.     Wherefore, Defendants knew or should have known that K.B. was disabled, and that accommodations for K.B.'s disability were needed.

57.     Notwithstanding this knowledge, the District did not and would not provide K.B. with accommodations.

58.     As a result, K.B. was excluded and denied meaningful access to the school, the District's activities, services, and its programs. Wherefore, by failing to provide K.B. with known, needed accommodations, the Defendant violated the Americans with

Disabilities Act ("ADA"), knowingly and intentionally discriminating against K.B., or acting with reckless indifference towards K.B.'s known rights.

59.     Defendant did not perform any test, and cannot show, that the providing of appropriate accommodations and services to K.B. would have worked a fundamental alternation to the District's programs, services, or activities. Nor did the Defendant perform any test, and cannot show that the providing of appropriate accommodations and services to K.B. would have worked an undue financial burden upon the District.

60.     In addition to those matters set forth above, by expelling K.B. to obtain services in a much more confining environment that isolates and excludes Plaintiff from his peers, Defendant's actions constituted the undue institutionalization of Plaintiff, because less confining accommodations existed and were readily available.

61.     Defendant also retaliated against K.B. when, without notice or meeting, it removed mental health counseling services that Defendant knew K.B. needed as a result of his disability.

62.     As set forth above, Defendant also acted intentionally, with willful misconduct, or with a deliberate indifference towards K.B.'s known rights as a qualified disabled person. Defendant exposed K.B. to overt discrimination by repeatedly, without basis, refusing to provide needed accommodations; by repeatedly subjecting K.B. to humiliation; and by dehumanizing K.B. in making K.B. believe that he was

fundamentally less worthy of the District's programs, services, and activities than his non-disabled peers.

63.     As a result of Defendant's violations of the ADA, Plaintiff K.B. has been damaged in both general and special damages, the amounts of which are to be proven at trial. While these types of retrospective remedies are not available under the I.D.E.A., they are available under the ADA. In addition, Plaintiffs demand costs and reasonable attorney's fees.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE REHABILITATION ACT
(Defendant District)

64.     Plaintiffs restate the prior allegations, incorporating them herein by reference as if restated with full force and effect.

65.     Plaintiff K.B. is a "disabled/handicapped" individual as defined in 29 USC § 705. The Rehabilitation Act and its implementing regulations require that Defendant administer its programs and activities in the most integrated setting appropriate to the needs of qualified handicapped/disabled persons. See 28 C.F.R. § 41.51 and 45 C.F.R. § 84.4.

66.     Plaintiff was excluded or denied meaningful and safe access to the District, its services, activities and its programs. At all times relevant to this lawsuit, the remaining Defendants were and acted in their capacities as agents, representatives and employees of the District.

67.     As a result of Defendant's denial and exclusion of Plaintiff from the District's services, activities, and programs, as set forth previously in this Complaint, Defendant violated the Rehabilitation Act, and discriminated against Plaintiff by reason of his disability. Such includes, without limitation, (i) excluding or denying access to school provided transportation for available accommodations and services; (ii) excluding or denying access to school classes and school services; and (iii) failing to provide accommodations commensurate with that required to allow Plaintiff to equally enjoy the benefits of a public education.

68.     Defendant's administration of the District in relationship to K.B. limited his availability to Alternative Services, based on the severity of need or disability.

69.     The same denied K.B. of the equal or same opportunity to receive the benefit(s) of Defendant's programs, activities, and services to the same extent as are available to other qualified individuals.

70.     The Defendant's aforementioned deprivations violated the Rehabilitation Act, and providing such opportunities to K.B. would not have been a fundamental alteration to the public school system, nor amounted to an undue financial hardship.

71.     Defendant also retaliated against K.B. when it removed from K.B. the mental health counseling services that Defendant had been providing.

72.     Defendant acted intentionally, with willful misconduct, or with a deliberate indifference towards Plaintiff's rights as a qualified disabled person. Defendant exposed

K.B. to overt discrimination by repeatedly, without basis, refusing to provide needed accommodations; by repeatedly subjecting K.B. to humiliation; and by dehumanizing K.B. by repeatedly making K.B. believe that he was fundamentally less worthy of the District's programs, services, and activities, than his non-disabled peers.

73.     As a result of the above, and as the proximate cause thereof, Plaintiff has been damaged in both general and special damages, the amount of which is to be proven at trial. To the extent such retrospective remedies were not available under the I.D.E.A., such remedies are made available by virtue of the Rehabilitation Act. In addition, Plaintiffs demand costs and reasonable attorney's fees.

<u>**THIRD CAUSE OF ACTION**</u>
**VIOLATION OF 42 U.S.C. § 1983**
(Defendants Joel Allred and Principal Hansen)

74.     Plaintiffs restate the prior allegations, incorporating them herein by reference as if restated with full force and effect.

75.     Defendants deprived Jackie Bates of her federal constitutional and/or statutory rights by failing and refusing to provide Plaintiff with notice of her procedural safeguards. The IDEA is designed so that before a school may add or take away from a service, program, or activity of a student, notice of that decision must be given to the parent of the student, along with appropriate notice and instruction relating to that parent's procedural safeguards.

76.     The above requirements ensure due process, prior to the denial or stripping a person of one or more services mandated by federal law.

77.     When Defendants stripped Jackie Bates' son of services, activities, and programs available and required to be provided under Federal law, Jackie Bates was required to undertake certain expenses, including without limitation, the purchase of a vehicle, payment for psycho-educational and other assessments, payment for math tutoring, payment for reading tutoring, and payment for mental health counseling.

78.     When Defendants stripped Jackie Bates' son of services, activities, and programs available and required to be provided under Federal law, and did so without fair notice or due process, Jackie Bates and K.B. were deprived of their rights and discriminated against in violation of the *Equal Protection Clause of the Fourteenth Amendment to the United States Constitution*, and by virtue of that disparate treatment, suffered emotionally in the form of pain, suffering, mental anguish, and distress.

79.     Defendants knew, or should have known, that they were denying Jackie Bates and K.B. of equal protection under the laws. Said Defendants were making substantive, federally required decisions about whether to provide K.B. with federally required services. Defendant Allred is the Special Education Director for the District, is well informed of these laws, and knew that the manner in which such denials and ignoring of requests for accommodations were acts and omissions that clearly violated federal law. Similarly, Defendant Anderson is the principal for the District, regularly is

involved in 504 and IEP meetings, and was well aware that the manner in which they were denying and ignoring the Plaintiffs' rights was in violation of federal law.

80.     The Defendants acted outside of any 504 Plan Meeting or IEP Meeting. Said Defendants also, without any independent assessment, and without providing any notice to Ms. Bates of her procedural safeguards, determined against uncontested findings by medical professionals, that K.B. was not disabled, and was not entitled to any accommodations.

81.     Wherefore, Defendants blatantly disregarded K.B.'s and Jackie Bates' well-known federal rights to *Equal Protection* and *Due Process* (procedural and substantive).

82.     As a direct and proximate result of Defendants' violations of the aforementioned well-known federal laws, and of those well-known regulations pertaining to those laws, Jackie Bates and her son, K.B., sustained injuries and damages. Rather than receive services, K.B. did not. Rather than receiving transportation services, K.B. did not. Rather than see her son receive an education, Ms. Bates experienced separation from her son, anxiety, pain and suffering, all without ever being informed of how she could properly address the wrongs being committed against her and K.B.

83.     By committing the aforementioned acts and omissions, Defendants deprived Plaintiffs of their rights, without due process of law, which in truth gave rise to the many deprivations, and many injuries that otherwise Plaintiffs would not have incurred, both special and general in nature.

84.     The approximate amount of damages incurred by Plaintiffs will be determined at trial. In addition, Plaintiffs demand costs and reasonable attorney's fees.

## FOURTH CAUSE OF ACTION

### NEGLIGENCE – IN THE ALTERNATIVE
(Defendants Joel Allred and Principal Hansen)

85.     Plaintiffs restate the prior allegations, incorporating them herein by reference as if restated with full force and effect.

86.     K.B. is a child. K.B. was in the District's care as a student. Furthermore, Defendants knew, or should have known that ignoring the fact that K.B. had a disability would subject K.B. to emotional harm, including without limitation, embarrassment; humiliation; dehumanization; and reputational damage.

87.     Furthermore, the individual Defendants, Joel Allred and Principal Hansen were both expressly apprised of the fact that K.B. has a disability, and were both responsible to avoid those things under their control that would cause K.B. to experience at school discriminatory embarrassment; humiliation; dehumanization; and reputational damage arising by virtue of K.B.'s disability. Wherefore, Defendant District and the Defendants as individuals owed a duty to K.B., to not act or fail to act in such a manner as would cause K.B. to suffer emotional damages or reputational harm as a result of his

disability – or at the very least, to promptly quell such things under their control that were leading to such damage.

88.     By ignoring the fact that K.B. had a disability, Defendants, and each of them, caused K.B. to suffer emotionally and to be repeatedly embarrassed and dehumanized. By ignoring the fact that K.B. had a disability, Defendants also caused K.B. to suffer reputational damages, with his teachers and his peers; to suffer lower grades, lower test results, and lower participation attributed not to K.B.'s disability, but rather to K.B. and his worth and character.

89.     Furthermore, given the nature of the individual Defendants' disregard for K.B.'s disability; the frequency of that disregard; and that K.B.'s disability was known to exist, the individual Defendants' ignoring of K.B.'s special circumstances constituted "willful misconduct" for which each individual is *personally* liable under the Utah Governmental Immunity Act.

90.     As a direct and proximate cause of Defendants' actions and inactions, Plaintiff K.B. was damaged, the amount of which is to be proven at trial. In addition, Plaintiffs demand costs and reasonable attorney's fees.

## JURY DEMAND

91.     Plaintiffs hereby demand a Jury trial.

## PRAYER FOR RELIEF

The Court should award Plaintiffs with the following relief, in addition to any relief that the Court deems just and equitable under the circumstances:

92.     Judgment for general damages and special damages arising from Defendants' statutory and constitutional violations against Plaintiffs, allocated to Plaintiff K.B., and or his parent Jackie Bates, as is appropriate;

93.     Judgment for general damages and special damages arising from Defendants' negligence against K.B., and allocated to Plaintiff K.B., and or his parent Jackie Bates, as is appropriate;

94.     Prejudgment and post-judgment interest, court costs, and Plaintiffs' attorney's fees as permitted by statute, rule, regulation, contract, or equity; and

95.     Any other relief that the Court deems just and equitable under the circumstances.

DATED this 5th day of May, 2020.

                              BEARNSON & CALDWELL, LLC


                              /s/ Aaron K. Bergman
                              Brad H. Bearnson
                              Wayne K. Caldwell
                              Aaron K. Bergman
                              *Attorney for Petitioners*